## H. G. BELL v. THE STATE.

No. 14787.   Delivered March 9, 1932.
Rehearing Denied April 6, 1932.

The opinion states the case.

*Sam H. Townsend* and *W. J. Townsend,* both of Lufkin, for appellant.

*John E. Taylor,* County Attorney, and *Benjamin Woodall,* Asst. County Attorney, both of Marshall, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is transporting intoxicating liquor; the punishment, confinement in the penitentiary for eighteen months.

Appellant was driving his automobile along a street in the city of Marshall. A search of the car by an officer disclosed approximately fifteen gallons of whisky. Appellant testified that he had borrowed the car from a friend and was on the way to Louisiana to purchase some pool tables. He said he did not know the whisky was in the car.

Appellant objected to the testimony of the officers touching the result of the search on the ground that no search warrant had been issued, and that there was no probable cause authorizing the search without a warrant.

The court qualified appellant's bill of exception as follows:

"When objection was made to the testimony complained of in this bill of exception, I retired the jury and heard the following testimony from the witness Ezell, from which I concluded that probable cause existed for the search of the defendant's automobile: 'At the time I first noticed Mr. Bell's car I noticed something unusual about it; it was the number plate on the front of the car; I first noticed how it was fastened on the car. When I first noticed that the car was stopped. No, I did not stop the car at that time I had noticed, as I was going to say, I had noticed the front number being wired on the car and the first thing that popped in my mind was it was a stolen car. It wasn't a Harrison County car. So, after the light changed to green and I pulled out on East Houston he passed me and I noticed the back number wired on practically the same as the front end, and if I do say it, that is one way we detect lots of stolen cars. I stopped Mr. Bell and got out of my car and came back to where he was at. I glanced in the left hand door, the side he was on, and the side I went to the glass in the door was down possibly two inches from the top. I was on the driver's side of the car talking to him. The glass liked about two inches being all the way up. I went up to the car. I said something to him. My purpose in going to the car in the first place was to investigate to see if he was the rightful owner of the car. Yes, I went to ask the defendant if the car he was riding in belonged to him, and I asked him if he had any papers on that particular car. When I got to

the car the door was still closed. At that time I asked him if he had any papers in his possession showing ownership of the car. He said that he didn't, but that he had some papers identifying himself. He did say something to me with reference to showing me the papers; he was feeling in his pockets, I believe he had on a lumber jacket, best I remember, anyway a kind of jumper and he was feeling in his pockets. When he began feeling in his pockets I opened the door of the car to see the papers he was feeling for, to show me about the papers he had. Q. At the time you stopped the car up until the time you opened the door of the car, Mr. Ezell, did you have in mind or did you intend to make any search of the automobile for intoxicating liquor? A. No sir, didn't have it in mind. That hadn't occurred to me. My sole and only purpose in doing what I did was to ascertain if that was a stolen car. I opened the door about that time. When I opened the door I observed something in the pocket of the door—a pint of liquor. When I observed that I did not have to make any search of the car to see that. It was in view, about one-third of the bottle above the pocket in plain view. When I saw that I said something to the defendant. I first picked that up and looked at it and I glanced back at the time over his shoulder and I seen there was some fruit jar cases in the car and a cushion laying on top of it, and I says to him, 'How much have you back there?' and he says, '15 gallons.' I did not search the car at that time. I never at any time made a search of the automobile before I brought him back to town. I did not have any intention of searching the car. My only purpose in doing what I did was to ascertain if it was a stolen car. Q. Before you did search the back end of the car he stated to you he had 15 gallons of whisky? A. Yes, sir, really I couldn't have sworn he had any in the back until I got back to the police station. He told me he had 15 gallons of whisky and that is before I made an examination to see.'

"From the foregoing testimony it appeared that not only did probable cause exist for searching the automobile, but it appears that the defendant, before the search, made admissions to the officers which were found to be true. The court was of the opinion that the testimony was admissible under such circumstances."

We deem it unnecessary to decide whether the officer was warranted in stopping appellant and questioning him as to the ownership of the automobile. If he went beyond his legal rights, appellant could have opposed his action and driven away in his car. Upon observing a pint bottle and some fruit jar cases in the car, the officer asked appellant how much he had in the car. Appellant replied that there were fifteen gallons. Acting upon appellant's statement, the officer was within his rights in making the search. Appellant's declaration that he had whisky in the car was not to be excluded by reason of article 727a, C. C. P., which provides that no evidence obtained in violation of the law shall

be admitted against the accused in a criminal case. Appellant's declaration that he had whisky in the car was one that he was not forced to make. Had he remained silent he would probably have been in better position to oppose the reception of the testimony of the officer touching the result of the search. Having made the declaration to the officer that he had fifteen gallons of whisky in his car, which statement was found to be true, the proof thereof was authorized under the exception embraced in the confession statute permitting evidence of the statements of one accused while under arrest, where such statements lead to the discovery of the fruits of the crime. Carter v. State, 113 Texas Crim. Rep., 433, 22 S. W. (2d) 659. We are constrained to hold that the bill of exception, as qualified by the trial judge, fails to manifest error.

An examination of all of appellant's contentions leads us to the con· clusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—In a well prepared motion, supported by oral argument, appellant complains of our decision of this case. He cites a number of authorities which, in·our opinion, do not sustain his contention.

It is apparent from the facts in this case that when the officer engaged appellant in conversation relative to his ownership of the car in which appellant was riding, and which the officer believed for certain reasons to be a stolen car—that the officer had no belief or suspicion of the fact that appellant had in the car whisky, or that he was then engaged in the illegal transportation of such intoxicating liquor. The question as to whether such suspicion in a case of search for intoxicating liquor, or other fruits of crime, be based upon facts sufficient to form probable cause, as that term is understood and applied by the courts, has been the subject of many opinions by this and other courts. However it is not believed that the entrance into a car, or the examination of it for some legitimate purpose, in good faith, can be classed as the beginning of a search, or be brought within the purview of any of the cases referred to. If the officer in this case had had it in his mind to search appellant's car for intoxicating liquor, or stolen goods, or any other purpose such as is fairly comprehended in the definition of a search thereof, under the facts of this case we would not likely hesitate to hold it a search without probable cause because not supported by facts sufficient to justify the search.

That which differentiates this case from cases of the kind above referred to is the fact that there was no intention on the part of said officer to search, and no claim that he had probable cause therefor. It could hardly be within the bounds of reason that if one entered a car innocently, or for any ordinary purpose other than that he thought it contained contraband articles, or was engaged in illegal enterprises, and after entry discovered therein whisky or stolen property or other matters which would be pertinent as evidence upon the trial of some cause, that such evidence should be rejected, and its rejection justified upon the ground that it had been obtained in violation of some law of this state, or of the Constitution of this state or the United States, as is the present demand of article 727a, C. C. P. It is as though one was invited to enter a car, or entered it innocently by mistake. His testimony as to what he saw or observed in a car under such circumstances certainly could not be claimed to be evidence found in violation of law. In our opinion the motion is not well founded.

The motion for rehearing will be overruled.

*Overruled.*